UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,
        Plaintiff,                Case No. 21–cr–20590

v.                            Hon. Shalina D. Kumar

Bobby Boseman,
        Defendant.
_____

## Defendant's Motion to Suppress Evidence and Request for an Evidentiary Hearing

Now Comes the Defendant Bobby Boseman, by and through his attorney Henry M. Scharg, and moves this honorable Court to suppress all evidence obtained from the unlawful searches of Defendant's premises at 1915 Tebo St., in the City of Flint on February 26, 2021, March 16, 2021 and August 3, 2021, conducted by the Flint Police Department, Flint Area Narcotics Group "FANG" and the Federal Bureau of Investigation "FBI", in violation of the Fourth Amendment to the U.S. Constitution.

Respectfully submitted,

/s/ *Henry M. Scharg* (P-28804)
Attorney for Defendant
30445 Northwestern Hwy, Suite 225
Farmington Hills, Michigan 48334
(248) 596-1111
hmsattyatlaw@aol.com

Dated: December 10, 2022

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,
                    Plaintiff,                    Case No. 21–cr–20590
v.                                                HON. SHALINA D. KUMAR

Bobby Boseman,
                    Defendant.

### Certificate Regarding Concurrence

I certify, in compliance with E.D. Mich. LR 7.1(a)(2)(A), the undersigned  contacted opposing counsel, Ann Nee, Assistant U.S. Attorney, on December 9, 2022, explained the nature of the motion and its legal basis, and requested but did not obtain concurrence in the relief sought.

/s/ *Henry M. Scharg*
HENRY M. SCHARG (P28804)
Attorney for Defendant

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,
          Plaintiff,                    Case No. 21–cr–20590
v.                                      Hon. Shalina D. Kumar

Bobby Boseman,
          Defendant.

**Brief in Support of
Defendant's Motion to Suppress Evidence
and Request for an Evidentiary Hearing**

**Facts**

Defendant Bobby Boseman is charged in a Second Superseding Indictment with two counts of Sex Trafficking and Attempted Sex Trafficking by Force, Fraud, and Coercion; Possession with Intent to Distribute Cocaine; Possession of a Firearm in Furtherance of a Drug Trafficking Crime; three counts of being a Felon in Possession of a Firearm and Ammunition; and with Maintaining a Drug Premises. (Sec. Super. Indict., ECF No. 22, PageID.69–73).

Mr. Boseman continuously resided at 1915 Tebo St., in Flint, Michigan, between February 2021 and August 2021. On August 3, 2021, Flint Police Department Officer Albert Essix was dispatched to the Tebo

residence to conduct a "welfare check." (Exhibit A – Warrant Affidavit 8/3/21, p. 3).  The police received an anonymous 911 call from a female who identified herself as a family member of an alleged adult female victim, "V1."  The anonymous caller reported to the 911 dispatcher that V1 had been missing for a couple of days and that the anonymous caller had "followed" V1's cell phone to Tebo. *Id.* The caller also told the police that other unidentified individuals informed her that V1 and another alleged adult female, "V2," were tied up and being assaulted in the Tebo residence. *Id*.  The Flint Police Officers arrived at the Tebo location about 45 minutes after the 911 call was made, and learned that the anonymous caller was no longer in the area, but had to leave. (Exhibit A.1 – Chronology of Events).

At the Tebo residence, Officer Villareal made contact with an unknown male through the front door. *Id*. At the same time, Officer Essix saw two unknown females at the rear of the residence who denied knowledge of the victims. *Id*. One of the females drove away from the scene, and the other walked away. *Id*. The unknown male at the doorway also left. *Id*.

Officer Essix walked to the rear of the residence and saw two unknown males looking through a wooden fence behind the house, who fled when Essix saw them. *Id*. at 4. At the same time, another unknown female

exited the rear door and walked away from the residence and Essix as he attempted to speak with her. *Id*.

The officers then entered the house claiming "concern for the welfare of the victims identified in the 911 call." *Id*. The officers found V1 in a bedroom, fully clothed, laying on a couch. *Id*. She had difficulty speaking, complained of rib pain, and had contusions around both eyes. *Id*. The officers found V2 in a different bedroom lying face down with clear fluid around her head. *Id*. Her face and eye were swollen, and her jaw also appeared to have been injured. *Id*. The officers then called for an ambulance. *Id*.

Later that same day, the Federal Bureau of Investigation "FBI" agents obtained a warrant based upon the statements of V1 and V2, who alleged that they went to Tebo residence to buy drugs. *Id*. After getting high for several hours, Boseman allegedly accused them of stealing drugs, physically assaulted them with a machete, and held them there by armed guards. *Id*. at 5. V1 and V2 also alleged that they were sexually assaulted by various persons and forced to use a dildo on each other. *Id*. The "FBI" agents executed the warrant and found cash, cell phones, drugs, paraphernalia, dildos, a machete, firearms, and ammunition. *Id*. at 5–6.

Earlier the same year, City of Flint Police Officers and members of the regional task force "FANG" executed searches of the Tebo residence pursuant to search warrants on February 25, 2021, and March 13, 2021, respectively. Firearms and drugs were found during each search.

## Argument

**I.    Probable cause and exigent circumstances did not exist to excuse law enforcement's warrantless entry and search of Defendant Boseman's residence on August 3, 2021**.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV.

It is a "basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980) (citation omitted). Nevertheless, because the touchstone of the Fourth Amendment is "reasonableness," the warrant requirement is subject to certain exceptions. *Flippo v. West Virginia*, 528 U.S. 11, 13, 120 S. Ct. 7,

145 L. Ed. 2d 16 (1999). "[W]arrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 393-394, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978) (citations omitted).

Relevant to the August 3, 2021 warrantless search, the need to assist persons who are seriously injured or threatened with injury is an exigency obviating the requirement of a warrant. "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Id.* at 392 (citation omitted). Accordingly, law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury. *Id.* "[T]he police may not enter a private residence without a warrant unless both 'probable cause plus exigent circumstances' exist." *United States v. McClain*, 444 F.3d 556, 561 (6th Cir. 2006) (citation omitted).

"Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (citation

omitted). The establishment of probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). However, the "mere possibility" that a crime could be occurring within a home is not sufficient to justify a warrantless search; the police must have an "objectively reasonable basis for their belief" that a crime is being committed. *United States v. Ukomadu*, 236 F.3d 333, 337 (6th Cir. 2001). Likewise, mere speculation that a crime could be occurring is insufficient to establish probable cause. See *McCurdy v. Montgomery County*, 240 F.3d 512, 519 (6th Cir. 2001).

To satisfy the exigent circumstances exception, the government "must show that there was a risk of serious injury posed to the officers or others that required swift action." *United States v. Huffman*, 461 F.3d 777, 783 (6th Cir. 2006). "This 'emergency aid exception' does not depend on the officers' subjective intent or the seriousness of any crime they are investigating when the emergency arises. It requires only 'an objectively reasonable basis for believing,' that 'a person within the house is in need of immediate aid.'" *Michigan v. Fisher*, 558 U.S. 45, 47, 130 S. Ct. 546, 175 L. Ed. 2d 410 (2009) (citation omitted).

In reviewing whether exigent circumstances were present, a District Court considers the "totality of the circumstances and the inherent necessities of the situation at the time." *Huffman*, 461 F.3d at 783 (citation omitted). Indications of the need of aid include reported observations of distress, *Schreiber v. Moe*, 596 F.3d 323, 330 (6th Cir. 2010), and credible, reliable evidence that someone inside the home is in trouble. *Johnson v. City of Memphis*, 617 F.3d 864, 869 (6th Cir. 2010). "This court considers whether an officer's belief that an exigency existed was objectively reasonable based upon the 'objective facts reasonably known to, or discoverable by, the officers at the time of the search.'" *United States v. Barclay*, 578 F. App'x 545, 548 (6th Cir. 2014) (citation omitted).

The government must also show that the police had probable cause to believe the exigency existed. See *United States v. Johnson*, 9 F.3d 506, 510 (6th Cir. 1993) (when the police have probable cause to believe that a burglary is in progress, they are also confronted with the necessary exigency, that is, the need "to ensure the protection of everyone on the scene and to prevent the loss or destruction of the owner's property.")

In this case, law enforcement only had an allegation of V1 and V2 being assaulted at the Tebo residence from an anonymous source, or the hearsay within hearsay statement of the family member who called the 911

dispatcher. There was no information about whether the persons who reported the assaults on V1 and V2 had personal knowledge or not. The officers did not verify or investigate, or attempt to corroborate the allegations before their warrantless entry of Boseman's home. There were no underlying circumstances provided to show what the anonymous informant's conclusion about assault was based, and there was no showing of the anonymous informant's credibility or the reliability of the information required by the U.S. Supreme Court in *Aguilar v. Texas*, 378 U.S. 108, 114, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964).

The anonymous allegation of assault did not provide an objective basis to believe exigent circumstances existed to enter the house. See *Kerman v. City of New York*, 261 F.3d 229, 235-36 (2d Cir. 2001) (concluding that an anonymous 911 call, by itself, provides an insufficient basis for a finding of exigency); cf. *Florida v. J.L.*, 529 U.S. 266, 274, 120 S. Ct. 1375, 146 L. Ed. 2d 254 (2000) (holding that "an anonymous tip lacking indicia of reliability" that an individual is carrying a gun is not enough to justify a *Terry* stop).

The circumstances in this case do not compare with cases where the courts have upheld warrantless entries under the exigent circumstances exception. In *United States v. Johnson*, 22 F.3d 674 (6th Cir. 1994), the

officers responded to a call that a victim was being held in an apartment against her will. *Id*. at 680. When the police arrived, the 14-year-old victim answered the door and told the officers that the defendant had locked her in the apartment and would not release her. *Id*. The victim was alone in the apartment and locked in behind an armored gate. *Id*. The police removed the lock from the gate and freed the victim. *Id*. Under those circumstances, the Sixth Circuit found that the police were justified in the limited warrantless entry to free the victim. *Id*.

In *Brigham City v. Stuart*, 547 U.S. 398, 126 S. Ct. 1943, 1949 (2006), the police responded, at 3 o'clock in the morning, to complaints about a loud party. *Id*. at 406. As they approached the house, they could hear a loud altercation or fight occurring inside. *Id*. The officers heard "thumping and crashing" and people yelling "stop, stop" and "get off me." *Id*. After looking in the front window and seeing nothing, the officers walked around back to investigate further. *Id*. In back, they could see an altercation taking place inside the kitchen. *Id*. "A juvenile, fists clenched, was being held back by several adults. As the officers watch, he breaks free and strikes one of the adults in the face, sending the adult to the sink spitting blood." *Id*. The U.S. Supreme Court held that "[i]n these circumstances, the officers had an objectively reasonable basis for believing

both that the injured adult might need help and that the violence in the kitchen was just beginning." *Id.*

Similarly, in *Michigan v. Fisher*, 558 U.S. 45, 130 S. Ct. 546, 175 L. Ed. 2d 410 (2009), when responding "to a complaint of a disturbance" at a residence where a man was "going crazy," officers "found a household in considerable chaos: a pickup truck in the driveway with its front smashed, damaged fenceposts along the side of the property, and three broken house windows, the glass still on the ground outside." *Id.* at 45-46. The police also saw "blood on the hood of the pickup and on clothes inside of it, as well as on one of the doors to the house." *Id.* at 46. Through a window, the officers saw a man with "a cut on his hand … screaming and throwing things." *Id.* An officer entered the house without a warrant, and the Supreme Court held that "the emergency aid exception, as in *Brigham City*, dictates that the officer's entry was reasonable." *Id.* at 48. The Supreme Court explained that (1) the police officers "were responding to a report of a disturbance," (2) "when they arrived on the scene they encountered a tumultuous situation in the house," and (3) "the officers could see violent behavior inside." *Id.*

This case is analogous to *Williams v. Maurer*, 9 F.4th 416, 435-36 (6th Cir. 2021), which involved a 42 U.S.C. § 1983 action. In *Williams*, the police similarly responded to a report of a disturbance from an anonymous

caller. *Id*. at 435. But when they arrived on the scene, there was no
indication of a tumultuous situation in the defendant's home, and the police
did not witness any violent behavior inside the apartment. *Id*. at 435–436.
Also, by the time the police entered the defendant's apartment without a
warrant, there was reason to doubt the report of the disturbance. *Id*. at 436.
The anonymous caller had explained that she was no longer certain which
apartment she had heard the screaming coming from. *Id*. The police heard
screaming coming from another apartment, and when they looked through a
window, the did not see any signs of a disturbance. *Id*. There were also no
signs of a forcible entry. *Id*. Consistent with the reasoning of the *Brigham
City* and *Fisher* decisions, the Sixth Circuit held that a reasonable juror
could conclude that the police lacked an objectively reasonable basis for
relying on the emergency aid exception to enter the defendant's home
without a warrant. *Id*.

This case is also consistent with the facts in *United States v. Troop*,
514 F.3d 405 (5th Cir. 2008). In *Troop*, the defendant was convicted of
transporting illegal aliens. *Id*. at 407. Border agents tracked the footprints of
five individuals that they believed were illegal aliens. *Id*. They tracked the
footprints to defendant's home. *Id*. The agents knocked on the door without
getting an answer, and saw two men sleeping on a bed when they looked

through a window. *Id*. at 408.  The agents entered through the window and

arrested the men inside. *Id*.

The Fifth Circuit Court rejected the government's argument that there

were exigent circumstances based on physical distress:

> As evidence that the aliens may have been in physical distress, the
> Government points to the high temperatures that night, the evidence
> that the suspected aliens were fatigued, and the failure of anyone
> inside Troop's house to respond when the agents knocked on the door
> and window. After review of the evidence and testimony presented at
> the suppression hearing, we do not agree that this evidence permits a
> finding of exigent circumstances.
>
> *   *   *
>
> [T]he Government points to the fact that the aliens walked some
> distance in ninety-degree heat and showed signs of fatigue at the end
> of their journey as evidence of physical distress. This alone is
> insufficient to demonstrate exigent circumstances requiring an
> immediate entry into the house.  *   *   *   [T]here was no evidence of
> medical distress requiring immediate aid, such as loss of blood, signs
> of physical illness, or evidence that an individual had to be carried or
> dragged. The Government also did not present any evidence of what
> type of medical distress is typically produced by a four-mile walk in
> the heat at night, which might have indicated that it was probable that
> the suspected aliens needed aid. Absent any such evidence, it was
> unreasonable for the agents to conclude that the suspected aliens
> likely needed immediate aid based solely on the fact that the aliens
> showed fatigue.

Without any objective evidence of physical distress, the failure
of anyone to respond to the agents' knocking at the front and back
doors of Troop's house also becomes insufficient to create exigent
circumstances.  [*Troop*, 514 F.3d at 409–410.]

Here, not only were the assault allegations made by an anonymous source insufficient to allow entry without a warrant, but 45 minutes had passed since the family member had called 911. The family member had also left the scene before the police arrived. The Flint officers did not observe any evidence to support an objective and reasonable belief that V1 and V2 were being assaulted inside the Tebo residence—there was no probable cause to believe an assault had occurred. When they arrived, the officers simply saw people leaving the house. The unknown females who left denied being V1 or V2. There was no screaming or noise coming from inside the house. The officers did not look inside of the house through any windows. And there was no indication that they knocked and announced their presence, or that they called out for V1 and V2. They simply walked in without a warrant based on an unsubstantiated allegation.

Probable cause and exigent circumstances did not objectively exist to excuse the officers' warrantless entry into Defendant Boseman's residence.

## II.   The February 25, 2021 and March 13, 2021 search warrants lacked probable cause to search Defendant Boseman's residence.

To determine whether probable cause for a search exists, a magistrate issuing a warrant must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including

the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). A search warrant affidavit must contain sufficient allegations to support the magistrate's finding that there is a "nexus between the place to be searched and the evidence sought." *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir.2005) (citation omitted).

An officer's statement that "[a]ffiants have received reliable information from a credible person and do believe" that heroin is stored in a home, is inadequate. *Gates*, 462 U.S. at 239 (citation omitted). That would be "a mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause. Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Id.*

### A.    February 25, 2021.

The Flint police applied for a search warrant on February 25, 2021. (Exhibit B – Warrant Affidavit 2/25/21). The police allegedly received

anonymous tips that drug trafficking was being conducted at the Tebo residence. *Id.* at 410. The police conducted surveillance for the 24-48 hours before applying for the warrant and saw vehicles pull up to 1915 Tebo, with one of the occupants going to the door. *Id.* That person would stay inside for "a very short period of time" and then leave in the vehicle. *Id.*

The police conducted traffic stops on "numerous" vehicles that left Tebo. *Id.* During the stops, the police found cocaine, and the persons in the vehicle allegedly said that they purchased the narcotics at the Tebo location. *Id.* Those people wished to remain anonymous for their safety. *Id.*

One person who was stopped by the Flint police allegedly said that there was a black male by the nickname of "AI" who is the contact for the house if individuals want to purchase narcotics. *Id.* "AI" answers the door, and another black male nicknamed "Lob" is a part of the operation. *Id.* There were also 5–6 other black males that were inside the residence. *Id.* There were also firearms inside the residence, but no specific names of the occupants was given. *Id.*

The affidavit also states that Tebo location had been the target of two drive-by shootings on April 13, 2020, and January 29, 2021. *Id.* at 411.

In the February 25, 2021 warrant affidavit, the affiant used vague, undefined terms. The officer says that he saw vehicles pull up to Tebo, but

he does not say how many. The officer saw person go inside Tebo for "a very short period of time," but a short time is subjective without a stated time. The Flint police conducted traffic stops on "numerous" vehicles that left the Tebo location, but we do not know how many vehicles were stopped, and of those, how many had cocaine, and how many of the persons stopped made statements about any alleged drug activity at Tebo location. *Id*. Finally, the people who did make statements about drug activity at 1915 Tebo had a motive to fabricate after being pulled over and found to be possessing cocaine by telling the police what they wanted to hear, that is, there was drug activity at the Tebo location. They also wished to remain anonymous for their safety, so their veracity and reliability as informants was not substantiated.

**B.    March 13, 2021.**

The members of "FANG" applied for a search warrant for the Tebo residence on March 13, 2021. (Exhibit C – Warrant Affidavit 3/13/21). The FANG officers allegedly received an anonymous tip that there was "drug activity" at Tebo. *Id*. at 1096 (batch page number). Two officers conducted a trash pull on March 12, 2021, directly in front of 1915 Tebo, and found "numerous clear plastic baggies containing a white powder" that field tested positive for cocaine. *Id*. The "FANG" officers also conducted five hours of

surveillance at 1915 Tebo over a two-day period and saw "multiple short stays" by both vehicles and foot traffic. *Id*.

In the March 13, 2021 warrant affidavit, the "FANG" officers began their investigation with an anonymous tip about drug activity at 1915 Tebo St. The officers pulled trash from the Tebo property and found "numerous clear plastic baggies containing a white powder" that field tested positive for cocaine. However, there was no way for the officers to know whether those baggies were brought to the  Tebo propety and disposed of there by a visitor, and the term "numerous" is subjective. If only three baggies were found, that is not sufficient to show probable cause. The officers also only conducted one trash pull. Additional trash pulls, at least one more, were necessary to establish probable cause that there was actually drug activity at the Tebo residence.

The officers also conducted five hours of surveillance at the Tebo residence over a two-day period where they saw "multiple short stays" by both vehicles and foot traffic. The terms "multiple" and "short stays" are subjective and not defined in the affidavit making an insufficient and vague attempt to establish probable cause

**III.    The evidence must be suppressed under the exclusionary rule, and law enforcement did not have an objectively reasonable, good-faith belief that their conduct was lawful.**

The evidence seized from Bosman's home was obtained as the fruit of the officers' unlawful entry into Boseman's home. The search warrant affidavit relied on the statements of V1 and V2. Without their statements, obtained from the illegal search, the warrant was lacking in probable cause.

The Supreme Court created the exclusionary rule—a prudential doctrine which prohibits "evidence obtained in violation of the Fourth Amendment [from] be[ing] used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Calandra*, 414 U.S. 338, 347, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974). The rule is "designed to safeguard Fourth Amendment rights generally through its deterrent effect." *Id*. at 348. However, "[t]he fact that a Fourth Amendment violation occurred … does not necessarily mean that the exclusionary rule applies." *United States v. Moorehead*, 912 F.3d 963, 967 (6th Cir. 2019) (citation omitted).

Courts must ask whether "the deterrence benefits of suppression … outweigh its heavy costs." *Id*. (citations omitted). In the deterrence analysis, courts must consider the culpability of the law enforcement conduct at issue:

[T]he deterrence benefits of exclusion vary with the culpability of the law enforcement conduct at issue. When the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. But when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force and exclusion cannot pay its way. [*Davis v. United States*, 564 U.S. 229, 238, 131 S. Ct. 2419, 2427-28 (2011) (citations and brackets omitted).]

The Supreme Court thus has created a "good-faith" exception to the exclusionary rule: the introduction of evidence obtained in violation of the Fourth Amendment is permitted in criminal trials when the evidence is "obtained in the reasonable good-faith belief that a search or seizure was in accord with the Fourth Amendment." *United States v. Leon*, 468 U.S. 897, 909, 104 S. Ct. 3405, 3413 (1984) (citations omitted). Courts must ask "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's decision." *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017) (citations omitted). *Leon* delineated at least four instances in which a well-trained officer would have known a search was illegal, thus barring application of the good faith exception:

[1] [I]f the magistrate . . . was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth . . . [2] where the issuing magistrate wholly abandoned [her] judicial role . . . [3] [where] a warrant [is] based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable

. . . [and [4] where] a warrant [is] so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized— that the executing officers cannot reasonably presume it to be valid. [*Leon*, 468 U.S. at 923.]

When law enforcement officials have acted unreasonably, the exclusionary rule exists to suppress evidence gained through unconstitutional means. *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Nix v. Williams*, 467 U.S. 431, 443, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) ("[T]he way to ensure [constitutional and statutory] protections is to exclude evidence seized as a result of such violations notwithstanding the high social cost of letting persons obviously guilty go unpunished for their crimes.").

This exclusion applies equally "to the fruits of the illegally seized evidence." *Calandra*, 414 U.S. at 347, 94 S.Ct. 613. The purpose behind exclusion is not to remedy the harm suffered by the victim of the illegal search, but rather "to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." *Id.*

In this case, the police acted deliberately when they made a warrantless entry into 1915 Tebo St., on August 3, 2021. They walked into the Tebo residence like they owned the place, without knocking and

announcing their presence, without observing any evidence to corroborate the allegations of assault, and without observing any evidence that V1 and V2 were actually present at the Tebo residence.

Also, the February 25, 2021, and March 13, 2021 search warrants were based on affidavits so lacking in indicia of probable cause as to render official belief in their existence entirely unreasonable. Exclusion in this case would protect the right to privacy for others after this case, and it would preserve judicial integrity.

## IV.   Entitlement to an evidentiary hearing.

"An evidentiary hearing is required 'only if the motion is sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question.'" *U.S. v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006) (citations omitted).  Defendant Boseman is entitled to an evidentiary hearing because he contests issues of fact concerning the officers' warrantless entry into his home without probable cause or the establishment of exigent circumstances, which invalidated their entry and search of his home.

WHEREFORE, Defendant Bobby Boseman moves this Honorable Court to order an evidentiary hearing and to suppress at trial all evidence

seized from the 1915 Tebo St., in the City of Flint, Michigan on Feb. 25,

2021, March 13, 2021, and August 3, 2021.

Respectfully submitted,

/s/ *Henry M. Scharg*
Attorney for Defendant
30445 Northwestern Hwy, Suite 225
Farmington Hills, Michigan 48334
(248) 596-1111
hmsattyatlaw@aol.com

Dated: December 10, 2022

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,
          Plaintiff,                Case No. 21–cr–20590

v.                             HON. SHALINA D. KUMAR

Bobby Boseman,
          Defendant.

## Certificate of Service

I certify that on December 10, 2022, I electronically filed the above

*Motion* with the Clerk of the Court using the CM/ECF system, which served

the document(s) to the parties of record.

/s/ *Henry M. Scharg*
HENRY M. SCHARG (P28804)
Attorney for Defendant