UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,　　　　　　　Case No. 21-20590

　　　Plaintiff,　　　　　　　　　　　　　　F. Kay Behm
v.　　　　　　　　　　　　　　　　　　　United States District Judge

BOBBY BOSEMAN,

　　　Defendant.
_____ /

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO SEVER COUNTS AND BIFURCATE TRIALS (ECF No. 72)**

**I.　　INTRODUCTION**

This matter is before the Court on Defendant Bobby Boseman's motion to sever counts and bifurcate trials. (ECF No. 72). On January 5, 2022, Defendant was charged in a Second Superseding Indictment with the following counts:

> **Count I**: Sex Trafficking and Attempted Sex Trafficking by Force, Fraud, and Coercion, pursuant to 18 U.S.C. §§ 1591(a)(1), (b)(1), and 1594;
> **Count II**: Sex Trafficking and Attempted Sex Trafficking by Force, Fraud, and Coercion, pursuant to 18 U.S.C. §§ 1591(a)(1), (b)(1), and 1594;
> **Count III:** Felon in Possession of a Firearm and Ammunition, pursuant to 18 U.S.C. § 922(g)(1);
> **Count IV:** Possession with Intent to Distribute Cocaine, pursuant to 21 U.S.C. § 841(a)(1);

1

> **Count V:** Possession of a Firearm in Furtherance of a Drug Trafficking Crime, pursuant to 18 U.S.C. § 924(c)(1)(A);
> **Count VI:** Felon in Possession of a Firearm and Ammunition, pursuant to 18 U.S.C. § 922(g)(1);
> **Count VII:** Maintaining a Drug Premises, pursuant to 21 U.S.C. § 856(a)(1); and
> **Count VIII:** Felon in Possession of a Firearm and Ammunition, pursuant to 18 U.S.C. § 922(g)(1).

(ECF No. 22). This case was initially before District Judge Shalina D. Kumar but was reassigned to the undersigned on February 2, 2023.

On February 14, 2024, Defendant filed the present motion asking the court to order separate trials for Counts I-III (the sex trafficking related counts) and Counts IV-VIII, and to further bifurcate each trial to allow the felon-in-possession counts to be heard separately from the other substantive counts. (ECF No. 72). The Government filed a response on March 9, 2024. (ECF No. 74). On March 20, 2024, however, Defendant was charged in a third superseding indictment with the following counts:

> **Count I:** Possession with Intent to Distribute Cocaine, pursuant to 21 U.S.C. § 841(a)(1);
> **Count II:** Possession of a Firearm in Furtherance of a Drug Trafficking Crime, pursuant to 18 U.S.C. § 924(c)(1)(A);
> **Count III:** Felon in Possession of a Firearm and Ammunition, pursuant to 18 U.S.C. § 922(g)(1);
> **Count IV:** Maintaining a Drug Premises, pursuant to 21 U.S.C. § 856(a)(1);

> **Count V:** Felon in Possession of a Firearm and Ammunition, pursuant to 18 U.S.C. § 922(g)(1);
> **Count VI:** Sex Trafficking and Attempted Sex Trafficking by Force, Fraud, and Coercion, pursuant to 18 U.S.C. §§ 1591(a)(1), (b)(1), and 1594;
> **Count VII:** Sex Trafficking and Attempted Sex Trafficking by Force, Fraud, and Coercion, pursuant to 18 U.S.C. §§ 1591(a)(1), (b)(1), and 1594;
> **Count VIII:** Possession with Intent to Distribute Cocaine and Cocaine Base, pursuant to 21 U.S.C. § 841(a)(1);
> **Count IX:** Possession of a Firearm in Furtherance of a Drug Trafficking Crime, pursuant to 18 U.S.C. § 924(c)(1)(A); and
> **Count X:** Felon in Possession of a Firearm and Ammunition, pursuant to 18 U.S.C. § 922(g)(1).

(ECF No. 78). Because Defendant's motion was based on the charges brought against him in the second superseding indictment, the court ordered Defendant to file a supplemental brief "addressing any impact the third superseding indictment has on the arguments made in his motion." (ECF No. 79, PageID.505). Defendant filed his supplemental brief on March 31, 2024, and the Government chose not to file a response. (ECF No. 80). Neither party has formally requested a hearing and, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), the court will decide this motion on the pleadings.[1] After considering all of the relevant arguments, the court **GRANTS** Defendant's motion as it relates to

---

[1] E.D. Mich. LCrR 12.1 states that all motions filed in criminal cases are subject to the procedures set forth in E.D. Mich. LR 7.1.

bifurcating the trial, but **DENIES** Defendant's motion as it relates to severing the sex trafficking counts from the remainder of his charges.

## II.  FACTUAL BACKGROUND

The relevant factual background in this case was described in detail in the court's Opinion and Order denying Defendant's motion to suppress, issued on September 6, 2023.  (ECF No. 62).  That section is reproduced here, in relevant part:

> The key facts of this case stem from three separate searches of Defendant's residence located at 1915 Tebo Street in Flint, Michigan (the "Tebo house").[2]  (ECF No. 40, PageID.128).  The relevant facts of each search are as follows:
>
> A. The February 26, 2021 Search
>
> On or around February 26, 2021, Flint Police Department (FPD) officers received numerous tips and complaints about drug trafficking activity at the Tebo house.  (ECF No. 44, PageID.213).  FPD officers conducted surveillance "in and around the location over the course of 24-48 hours," and observed activity consistent with drug trafficking.  *Id.*  As a result, the FPD officers applied for a search warrant, which was authorized on February 25, 2021, and was executed the following day.  *Id.*, PageID.213-14; *see also* ECF No. 40-3, Search Warrant.  In their search, the officers allegedly found drugs, digital scales, firearms, ammunition, and other evidence.  *Id.*, PageID.214.

---

[2] "[Defendant] continuously resided at 1915 Tebo St. in Flint, Michigan, between February 2021 and August 2021."  (ECF No. 40, PageID.129).

B. The March 16, 2021 Search

On or around March 11, 2021, police officers with the Flint Area Narcotics Group (FANG) conducted surveillance of the Tebo house after receiving an anonymous tip regarding drug activity. *Id.*, PageID.214. During their surveillance, the officers allegedly observed "activity indicative of drug trafficking, including multiple 'short stays' by both vehicular and foot traffic." *Id*. The officers also conducted a trash pull from the house and found numerous plastic baggies containing a white powder that later field-tested positive for cocaine. *Id*. As a result, the officers applied for a search warrant, which was granted by Judge Jennifer Manley on March 13, 2021, and was executed on March 16, 2021. *Id.*; *see also* ECF No. 40-4, Search Warrant. In their search of the house, the officers allegedly found drugs, a digital scale, firearms, ammunition, and other evidence. *Id*.

C. The August 3, 2021 911 Call and Search

[] Around 2:50pm on August 3, an individual called 911 and reported that her cousin ("Adult Victim 1" or "AV-1") and another woman ("Adult Victim 2," or "AV-2")[3] had been missing for two days and were tied up and being held against their will at the Tebo house by a man who goes by the name "Killer B." (ECF No. 44, PageID.210; *see also* Exhibit 2A, 911 Call Audio). The caller provided a physical description of "Killer B" and both victims. *Id*. The caller also reported that the Tebo house was a drug house, and there were weapons and people using drugs inside. (ECF No. 58, PageID.296 ("the caller stated that they're all using crack in the home and there are lots of weapons")). The caller asked the police

---

[3] The caller referenced both victims by name in the 911 call, but their names have been withheld for their privacy. (ECF No. 58, PageID.287) ("Just to let your Honor know, we are going to collectively try to avoid referring to the victims by their names during this hearing…").

5

to conduct a welfare check and "get the victims out of the home," and stated that she was waiting down the street from the house for the police to arrive. *Id*.

Shortly after the 911 call, FPD Officers Vincent Villareal and Albert Essix were dispatched to the Tebo house. *Id.*, PageID.290, 341.

…

When the officers arrived at the Tebo house, they were informed by dispatch that the caller was no longer in the area, but she still wanted them to conduct a welfare check. *Id.*, PageID.298.

…

[Officers Villareal and Essix] entered the house through the open back door. *Id.*, PageID.308.  The officers walked down the main hallway and entered the first bedroom, where they located one of the victims lying on the couch. *Id.*, PageID.310.  Officer Essix then went down the hall to another bedroom (the "northeast bedroom") where he observed the other female victim "lying on her belly, face down." *Id.*, PageID.311.  Officer Essix testified that the second victim was completely nude and had significant bruising on her face. *Id*. Officer Essix testified that she told him they had been held there for two days, were forced to perform sexual acts, and had been beaten daily by customers and "Killer B." *Id.*, PageID.313.  Officer Essix notified dispatch that they had located the two victims and called for EMS and a supervisor. *Id.*, PageID.312.  The officers then conducted a limited protective sweep, but did not otherwise search the house.  (ECF No. 44, PageID.213).

Following these events, the FBI sought a federal search warrant for the house, which was authorized by U.S. Magistrate Judge Stafford on August 3, 2021. *Id.*; *see also* ECF No. 40-1, Search Warrant.  The search conducted pursuant to the authorized search warrant

> uncovered "a black dildo; a machete in a sheath, with blood near the machete; used condoms; cash currency; a firearm; ammunition; holsters; magazines; baggies of suspected crack cocaine; and drug paraphernalia." (ECF No. 1, PageID.6).  Law enforcement also found Defendant hiding in the basement of the house with more than $700 cash in his pocket.  *Id.*, PageID.7.

*Id.*, PageID.397-414.

The Government's theory of the case purportedly ties each of these individual searches together, arguing that Defendant operated a drug house on the south side of Flint for several months, as charged in Count IV, during which time he kept firearms in the house to protect his drugs and drug proceeds.  (ECF No. 74, PageID.462).  They argue the sex trafficking counts are also part of this general scheme, stating "[w]hen some of his drugs went missing, he accused two of his drug customers of stealing them.  Angered by the alleged theft, he stripped the women, beat them, and held them captive over the course of several days.  While held captive, [Defendant] offered his other drug customers sexual services provided by the women, and he enticed and coerced the women to perform the sex acts for drugs."  *Id.*

### III.    RELEVANT LEGAL STANDARDS

Federal Rule of Criminal Procedure 8(a) allows a defendant to be charged in a single indictment with separate offenses so long as those offenses "are of the

same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a).  Nevertheless, "[e]ven if the joinder of two or more offenses is permissible under Rule 8(a), the court may be required to sever the offenses because of the possibility of undue prejudice from a single trial." *United States v. Wirsing*, 719 F.2d 859, 864 (6th Cir. 1983).  Specifically, Federal Rule of Criminal Procedure 14 states, in part, if consolidation of offenses for trial "appears to prejudice a defendant or the government, the court may order separate trials of counts…or provide any other relief that justice requires." Fed. R. Crim. P. 14(a).  A motion for severance pursuant to Rule 14 "is committed to the sound discretion of the trial court." *Wirsing*, 719 F.2d at 864.  "When a defendant seeks severance, he has a heavy burden of showing specific and compelling prejudice and the denial of a motion to sever will be overruled on appeal only for a clear abuse of discretion." *United States v. Whitley*, No. CR 07-20559-FL, 2009 WL 426538, at *2 (E.D. Mich. Feb. 19, 2009) (citing *United States v. Daniels*, No. 06-20234, 2008 WL 324123, at *1 (E.D. Mich. Feb. 6, 2008) (citing *United States v. Harris*, 9 F.3d 493, 500 (6th Cir. 1993))).  To the extent these rules are consistent with providing a defendant with a fair trial, they must be "construed liberally to promote the goals of trial convenience and judicial efficiency." *Wirsing*, 719 F.2d at 862.

**IV.   ANALYSIS**

Defendant's motion, as amended by the relevant supplemental brief, asks the court to hold two separate trials in this case: one trial for Counts I-V and one trial for Counts VI-X.  (ECF No. 80, PageID.508).  Additionally, Defendant asks the court to further bifurcate these trials so that the jury will decide the felon-in-possession counts, Counts III, V, and X, after deciding guilt or innocence for Counts I, II, and IV in the first trial, and Counts VI, VII, VIII, and IV in the second trial.  *Id.*  The court will address these two requests in turn.

    A.    <u>Request to Sever Counts I-V from VI-X</u>

Defendant first argues he "will be prejudiced if [Counts VI and VII], involving sex trafficking, are tried together with the remaining counts, which involve firearms, drugs, and the fact that he has a prior felony conviction."  (ECF No. 72, PageID.449; ECF No. 80, PageID.508-09).  Specifically, he claims that "the incidents making up the counts occurred at different times, they were separate acts or transactions, [] they are of dissimilar character" and they "are not part of any common scheme or plan related to the remaining counts."  *Id.*  Whether joinder of offenses is proper under Rule 8(a) is determined by looking to the allegations on the face of the indictment.  *United States v. James*, 496 F. App'x 541, 546 (6th Cir. 2012) (citing *United States v. Deitz*, 577 F.3d 672, 691 (6th Cir.

2009)) ("This Court construes Rule 8(a) in favor of joinder and evaluates whether joinder was appropriate based upon the four corners of the indictment."); *United States v. Chavis*, 296 F.3d 450, 458 (6th Cir. 2002) (citing *United States v. Hubbard*, 61 F.3d 1261, 1270 (7th Cir. 1995)) ("it is the face of the indictment on which we must focus in deciding whether the charges were properly joined."). The key question is whether the charged offenses "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." *Hubbard*, 61 F.3d at 1270. The mere fact that the actions or events forming the basis of the relevant charges occurred at different times does not automatically warrant severance, it is merely one factor for courts to consider. *See Chavis*, 296 F.3d at 458.

The Government argues "the drugs, firearms, and sex trafficking were closely associated and interconnected" and are directly linked through the conduct included in Count IV, Maintaining a Drug Premises, which spans the entire time period from February 26, 2021 until August 3, 2021. (*See* ECF No. 78, PageID.496). The Government's theory of the case is based on evidence of what allegedly occurred at the Tebo house during that time, including the use and possession of cocaine and cocaine base, possession of firearms and ammunition,

10

and sex trafficking. (*See* ECF No. 58, PageID.296) (911 call from individual who was reporting the missing victims also "stated that they're all using crack in the home and there are lots of weapons."). Because Rule 8(a) must be broadly construed in favor of joinder, these allegations are sufficient to demonstrate a temporal and factual connection between the charged offenses to meet the requirements for joinder under Rule 8(a).

Nevertheless, "[e]ven if the joinder of two or more offenses is permissible under Rule 8(a), the court may be required to sever the offenses because of the possibility of undue prejudice from a single trial. Fed. R. Crim. P. 14(a); *Whitley,* 2009 WL 426538, at *1 (citing *Wirsing*, 719 F.2d at 864). "When a defendant seeks severance, he has a heavy burden of showing specific and compelling prejudice." *Id.* (citations omitted). A defendant is prejudiced by joinder if a jury would be unable to render a fair and impartial verdict on each offense, such as where "spillover evidence would incite or arouse the jury to convict on the remaining counts." *Thomas v. United States*, 849 F.3d 669, 675 (6th Cir. 2017) (citing *United States v. Rox*, 692 F.2d 453, 454 (6th Cir. 1982)); *United States v. Dale*, 429 F. App'x 576, 578 (6th Cir. 2011). There is, however, a preference for joint trials, and juries are presumed to be capable of separating evidence and

11

rendering a fair verdict. *See United States v. Powell*, No. 10-20169, 2010 WL 3393864, at *1 (E.D. Mich. Aug. 26, 2010).

Here, Defendant argues "[he] will suffer prejudice if the same jury will hear the violent allegations related to the sex trafficking counts, together with the other unrelated drug and weapon charges" and "[a]fter hearing those allegations, it will be too easy for the jury to convict on the remaining counts based upon impermissible grounds simply because he is a bad man, so he must be guilty." (ECF No. 72, PageID.452). The Government admits there will be a large amount of overlapping evidence in this case, however, the mere fact that evidence is overlapping does not mandate that two separate trials should be held. (*See* ECF No. 74, PageID.468) ("the drug customers are anticipated to testify about the treatment of the victims at Boseman's residence and Boseman's involvement in that treatment, as well as about Boseman's use of his residence as a premises for regular and extensive drug trafficking activities for months leading up to his August 2021 arrest…[and] the prominent display of firearms at the residence in furtherance of Boseman's drug trafficking activities."). In fact, overlapping evidence may support the joinder of offenses in one trial. *See, e.g., United States v. Obie*, No. 1:18-CR-007-ODE, 2018 WL 6184790, at *4 (N.D. Ga. Oct. 1, 2018), *report and recommendation adopted*, No. 1:18-CR-007-ODE-JKL, 2018 WL

5045630 (N.D. Ga. Oct. 17, 2018) ("due to the interrelatedness of the charges, if Obie were granted separate trials on the sex trafficking and tampering charges, at least some evidence pertaining to both charges would likely be admissible in each proceeding. Thus, severing the counts would likely not mitigate the potential prejudice to Obie of a single trial.").

While the charges raised against Defendant are serious, he has failed to show substantial prejudice is likely to result from holding one trial on these counts. *See United States v. Johnson*, 763 F.2d 773, 777 (6th Cir. 1985) ("absent a showing of substantial prejudice, spillover of evidence from one [count] to another does not require severance."). Defendant's motion includes generic allegations that the "jury will be influenced by the sensational accusations of sympathetic victims" and will "convict on all counts because they will believe he has a violent criminal disposition." (ECF No. 72, PageID.452). However, Defendant has not pointed to anything in the record or otherwise that plausibly suggests a jury would be unable to sift through the evidence to make an individualized and rational determination, especially if given a proper limiting instruction. *See United States v. Ross*, 703 F.3d 856, 884 (6th Cir. 2012) ("Even where the risk of prejudice is high, less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice."). While the

13

Government links all of the charges together with Count IV, Maintaining a Drug Premises, they also support each count with evidence gathered during individual searches of Defendant's residence, which will assist the jury in distinguishing the relevant facts as they relate to the individual charges. *See United States v. Serrano-Ramirez*, 319 F. Supp. 3d 918, 926 (M.D. Tenn. 2018), *aff'd*, 811 F. App'x 327 (6th Cir. 2020) ("the Court does not find that 'spillover' evidence would incite the jury to disregard its instructions and convict Defendant on other charges. This is particularly so because the Government's case, while supported by evidence of an ongoing drug distribution scheme, is in significant part built around two discrete incidents/time frames…that are easily distinguishable."). As such, Defendant has failed to show he will suffer "substantial prejudice" if the court were to hold one trial on all counts in the third superseding indictment and his request is denied.

    B.    <u>Request to Bifurcate Trials</u>

Defendant's motion further argues he will be unfairly prejudiced if the jury is allowed to hear that "[Defendant] has a prior conviction and that he is a felon" when deciding whether to convict on the other substantive counts. (ECF No. 72, PageID.456). Defendant asks the court to "allow the jury to hear evidence of the crimes charged, except for the felon in possession charge[s], and if the jury finds

14

Defendant guilty, then the government may present evidence of Defendant's stipulation to being ineligible (having a prior qualifying conviction), and the jury will simply decide whether he possessed a firearm while ineligible." *Id.*, PageID.457.  Again, under Rule 14, if the joinder of offenses "appears to prejudice a defendant…the court may order separate trials of counts…or provide any other relief that justice requires."  Fed. R. Crim. P. 14(a).  The court must balance "the interest of the public in avoiding a multiplicity of litigation and the interest of the defendant in obtaining a fair trial."  *Wirsing*, 719 F.2d at 864-65.  Relevant to the felon-in-possession charges, Counts III, V, and X, the Government is expected to present evidence at trial that Defendant "has a prior criminal conviction for a felony that was punishable by imprisonment for a term of more than one year." (ECF No. 72, PageID.455).  The key question is whether presenting this evidence to the jury would be unfairly prejudicial.

Defendant cites *United States v. Moore*, 628 F. Supp. 3d 737, 741 (E.D. Mich. 2022) and *United States v. Grant*, No. 3:21-CR-44-RGJ-CHL, 2022 WL 3716595, at *3 (W.D. Ky. Aug. 29, 2022), as two examples of cases involving a bifurcated trial on felon in possession charges.  In *Moore*, the court held that the "'felon' element of [the felon-in-possession charge] will be tried after the jury decides all other issues in the case" due to the "spill-over effects of the required

15

evidence: that he is a felon." *Moore*, 628 F. Supp. 3d at 740-41. Similarly, in *Grant*, the court held that "[g]ranting a bifurcated trial on the felon in possession charges…is appropriate because 'separating the trial of the felon-in-possession count from that of the drug-trafficking charges would only be a minor burden on the public [since i]t would not take much time to present the evidence of the felon in possession count to the same jury after they reach a verdict on the other counts." *Grant*, 2022 WL 3716595, at *3. Given Defendant's specific allegations of the risk of prejudice if the jury knows Defendant is a convicted felon, and the relatively minor burden on the court and the jury, the court will grant Defendant's request to bifurcate the felon-in-possession counts. *See, e.g., Moore*, 628 F. Supp. 3d at 741; *Grant*, 2022 WL 3716595, at *3; *United States v. Eubanks*, No. 3:06-CR-00105-R, 2009 WL 3171993, at *4 (W.D. Ky. Sept. 29, 2009) (bifurcating Counts 4, 8, and 12, charging Defendant with being a felon in possession of a firearm, from the remaining counts in the Indictment). The trial will proceed in two phases: in the first phase the jury will hear evidence about each of the substantive charges, Counts I, II, IV, VI, VII, VIII, and IX, as well as evidence about the alleged presence of the ammunition and firearms as they relate to Counts III, V, and X. However, the jury will not be informed about the felon in possession counts or hear Defendant's stipulation to his status as a felon until a verdict has been returned

on a remainder of the charges in the indictment. The Court will then read Defendant's stipulation as to his status as a felon and ask the jury to return a verdict on the felon in possession charges. *See Moore* 628 F. Supp. 3d at 741 (describing process for holding bifurcated trial).

**V.      CONCLUSION**

Defendant's trial, scheduled to begin on June 4, 2024, will proceed as one trial on all counts included in the third superseding indictment, unless the parties reach an alternate resolution before that time. However, the trial will be bifurcated, with the jury only hearing evidence about the "felon" element of Counts III, V, and X after the jury decides all other issues in the case. To that end, the Government may not mention that Defendant is a felon in any way – including by discussing Counts III, V, and X – during the first phase of the trial, unless otherwise directed by the court.

**SO ORDERED.**

Date: April 26, 2024                               s/F. Kay Behm
                                                   F. Kay Behm
                                                   United States District Judge